Proceeding under Declaratory Judgment Act to determine validity, meaning and construction of written contract, and to declare and announce the rights of the parties thereunder.
The contract follows:
"This agreement, Made this 16th day of November, 1946, by and between Z. Smith Reynolds Foundation, Incorporated, a charitable corporation, organized and existing under the laws of the State of North Carolina, hereinafter sometimes called the Foundation, and the Trustees of Wake Forest College, an educational corporation, organized and existing under the laws of the State of North Carolina, hereinafter sometimes called Wake Forest College.
"Witnesseth: Whereas, Z. Smith Reynolds Foundation, Incorporated, is a charitable corporation, organized and existing under the laws of the State of North Carolina, its certificate of incorporation having been filed in the office of the Secretary of State on August 21, 1936; and
"Whereas, said Z. Smith Reynolds Foundation, Incorporated, is the beneficiary of the Zachary Smith Reynolds Trust created by indenture dated August 21, 1936, between Richard J. Reynolds, Mary Reynolds Babcock, and Nancy Reynolds Bagley, as grantors, R. Edward Lasater and Safe Deposit 
Trust Company of Baltimore, Baltimore, Maryland, as Trustees, and Z. Smith Reynolds Foundation, Incorporated. A copy of the said indenture being hereto attached, marked Exhibit A and incorporated in this paragraph as if copied herein; and
"Whereas, in addition to the right to receive income under the provisions of the Zachary Smith Reynolds Trust aforesaid, the Foundation is empowered by its charter to receive property by way of gift, devise or bequest and to dispose of its income and properties for the accomplishment of charitable works in the State of North Carolina; and
"Whereas, The Trustees of the Wake Forest College is an educational corporation originally created by the General Assembly of North Carolina, Laws of 1833, Chapter 59, which original charter has been amended from time to time by Act of the General Assembly of North Carolina; and
"Whereas, the Foundations desires to enter into a contract with Wake Forest College for the purpose of encouraging, promoting and assisting in the financing of the objects and purposes for which Wake Forest College now exists upon the limitations and conditions hereinafter set out; *Page 504 
"Now, Therefore, in consideration of the premises and in further consideration of the mutual promises and covenants hereinafter set out, It Is Hereby Agreed:
"1. The following words and phrases wherever used in this agreement shall have the meanings herein set out as follows:
"(a) `Baptist State Convention' shall mean the Baptist State Convention of North Carolina, a corporate body acting in its corporate capacity through trustees and its membership being composed of and its control vested in duly elected messengers or delegates of the local Missionary Baptist churches in the State of North Carolina, but shall include any successor organization in any form having substantially the same membership and control.
"(b) `College' shall mean the Trustees of Wake Forest College, one of the parties to this agreement.
"(c) `Convention' shall mean the Baptist State Convention as defined in Paragraph (a) preceding.
"(d) `Endowment funds' shall mean and include all funds owned by or held in trust for Wake Forest College, the income from which is available for the operations of Wake Forest College.
"(e) `Foundation' shall mean the Z. Smith Reynolds Foundation, Incorporated, one of the parties to this agreement.
"(f) `Gross income,' when used herein in defining the net income of the Foundation, shall mean and include: (1) all of the income of the Foundation derived from the Zachary Smith Reynolds Trust, (2) all of the income of the Foundation derived from any other trust, where the whole or any part of the income of such trust is payable to the Foundation, and is not earmarked by the donor for other specific uses, (3) the income of the Foundation derived from investments of principal funds owned by its and not earmarked by the donor for other uses, and (4) any gifts made to the Foundation for current expenditure which the Foundation is not authorized to invest for the purpose of producing income, and which have not been earmarked by the donor for other specific uses.
"(g) `Net income,' when referring to the net income of the Foundation, shall mean the gross income of the Foundation as hereinabove defined, after deducting therefrom all of the necessary and proper expenses of the Foundation, including taxes, determined from time to time in accordance with good business and accounting practice.
"(h) `Wake Forest College' shall mean The Trustees of Wake Forest College, one of the parties to this agreement.
"(i) `Zachary Smith Reynolds Trust' shall mean the trust created by the indenture dated August 21, 1936, a copy of which is attached hereto and marked Exhibit A.
"2. Beginning on the 1st day of July, 1947, and ending on the 30th day of June, 1952, the Foundation will accumulate for the benefit of *Page 505 
Wake Forest College all of its annual net income up to the sum of $350,000, and on July 1, 1952, will pay the said accumulated net income to Wake Forest College to aid in the construction of buildings and permanent improvements upon the site selected by it in or near the City of Winston-Salem, Forsyth County, North Carolina. If the Foundation is satisfied that the College has made sufficient progress in procuring the necessary funds, or in commencing or completing buildings and permanent improvements, or in preparing to move or moving the operations of the College to the new site near Winston-Salem, it may pay such accumulated net income or any part thereof to the College prior to July 1, 1952. If, by reason of funds received from sources other than the Foundation, Wake Forest College shall not need the accumulated net income hereinabove referred to for the construction of buildings and permanent improvements, it may use for its operations the whole or that part of the said accumulated net income not needed for the construction of buildings and permanent improvements, or it may add the whole or any part of such accumulated net income to its endowment fund. This paragraph of this agreement is subject to the conditions hereinafter set out.
"3. Beginning on July 1, 1952, the Foundation will pay to Wake Forest College annually in perpetuity the annual net income of the Foundation up to the sum of $350,000. This paragraph of this agreement is subject to the conditions hereinafter set out.
"4. All of the operations of Wake Forest College, its library, Art Gallery and other movable property now located at the Town of Wake Forest, Wake County, State of North Carolina, and suitable for use in the new location shall be moved to a site in or near the City of Winston-Salem, Forsyth County, State of North Carolina. Wake Forest College will erect or cause to be erected at such new location sufficient buildings for the accommodation of a student body of at least 2,000 persons. If it does not have on hand on or before July 1, 1952, sufficient funds, including the accumulated net income referred to in Paragraph 2 of this agreement, to assure the construction of the required buildings, and has not actually let contracts for any part thereof, the Foundation shall have the right to revoke this agreement. If Wake Forest College does have on hand sufficient funds to assure the construction of buildings as hereinabove provided on or before July 1, 1952, the Foundation shall have the right to revoke this agreement unless construction is actually commenced and completed within a reasonable time.
"5. It is agreed that the payments to be made by the Foundation as prescribed in Paragraphs 2 and 3 of this agreement are subject to the following limitations and conditions, and that the Foundation shall have the obligations to make such payments only so long as each and all of the following conditions and limitations are kept and performed: *Page 506 
"(a) The operations of Wake Forest College shall be conducted at the site fixed as hereinabove provided unless otherwise agreed between Wake Forest College and the Foundation; provided, however, it is understood and agreed that the Bowman Gray School of Medicine of Wake Forest College, which is already located in Winston-Salem, may, in the discretion of The Trustees of Wake Forest College, be either retained at its present location or removed to some other location in Winston-Salem or its environs.
"(b) The name of Wake Forest College shall not be changed and the control of the College shall continue unaltered and undiminished in the Board of Trustees of Wake Forest College, as appointed or elected by the Baptist State Convention.
"(c) The Baptist State Convention shall continue in existence and shall exercise the control which it now has over Wake Forest College and shall continue its moral and financial support of the College. In addition to any special gifts or appropriations, or gifts or appropriations for specific purposes, made by the Convention to the College, the Convention shall pay annually to the College for its support and maintenance a proportion of Convention funds, not less than the proportion that has been paid to the College by the Convention during the current fiscal year of the Convention, which is he calender year 1946.
"(d) The present endowment fund of the College shall be maintained intact and used for the operation of the College at its new site.
"(e) By the terms of the indenture creating the Zachary Smith Reynolds Trust, the distributable income of said trust may be paid to he Foundation or otherwise used only for charitable purposes within the State of North Carolina. By the terms of the charter of the Foundation it exists only for `the accomplishment of charitable works in the State of North Carolina.' By the terms of its charter Wake Forest College is an educational corporation under the law of the State of North Carolina. At the time of the execution of this agreement Wake Forest College, the Foundation and the Zachary Smith Reynolds Trust are recognized as charitable objects and trusts under the general laws of the State of North Carolina. At the time of the execution of this agreement Wake Forest College, the Foundation, and the Zachary Smith Reynolds Trust are also recognized as charitable objects and trusts under the revenue laws of the United States and of the State of North Carolina, and, as such, all of their income and a large part of their properties are wholly exempt from taxation. In the event that any future valid law of the State of North Carolina other than a revenue law shall deprive Wake Forest College of its status as a charity so that the Trustee of the Zachary Smith Reynolds Trust cannot pay the income of said Trust of the Foundation or the Foundation cannot pay over such income to Wake Forest College except in violation of the limitations of the said Zachary Smith *Page 507 
Reynolds Trust and the charter of the Foundation, the obligation to make such payments to Wake Forest College shall forthwith cease and determine. In the event that any future valid revenue law of the State of North Carolina or of the United States, or of both of them, shall deprive Wake Forest College of its exempt status thereunder so that the Zachary Smith Reynolds Trust cannot continue to pay the income thereof to the Foundation and the Foundation cannot make the payments hereinabove provided for to Wake Forest College, except with the result that the Zachary Smith Reynolds Trust or the Foundation, or both of them, shall lose such exempt status as would otherwise be enjoyed by a trust organized for charitable purposes or a corporation organized for the accomplishment of charitable works in the State of North Carolina under such valid revenue law or laws then in effect, the obligation to make such payments to Wake Forest College shall forthwith cease and determine. If, however, some, but not all of the objects and purposes of Wake Forest College shall continue to retain their charitable and exempt status under said laws so that the payments herein provided for may be continued if limited to such charitable and exempt objects and purposes and so that the Zachary Smith Reynolds Trust and the Foundation can continue to make said payments without losing their status as a charitable trust and a charitable corporation under the law of North Carolina or without losing their exempt status under such valid revenue act or acts, the payments shall be continued, but shall be limited to the purposes which are recognized by said laws to be charitable and exempt. It is agreed that the Foundation desires to make and will make all of the payments herein provided for as long as it can do so without violating the provisions of the indenture creating the Zachary Smith Reynolds Trust and its charter and so long as such payments can be made without a diminution by taxation of the property or income of the Zachary Smith Reynolds Trust or the property or income of the Foundation, or both of them, solely because of the payments to Wake Forest College herein provided for.
"6. All of the undertakings and obligations of this agreement on the part of the Foundation are and shall be undertakings and obligations of the Foundation and its successors only, and no grantor of the Zachary Smith Reynolds Trust and no Trustee of the Foundation, now or hereafter acting as such, shall be subject to any individual liability of any nature whatsoever, directly or indirectly, to Wake Forest College because of (a) any undertaking or obligation of the Foundation hereunder, (b) the creation of the Zachary Smith Reynolds Trust, (c) having acted as a Trustee of the Foundation, (d) having authorized the execution of this agreement, or (e) having executed this agreement as a Trustee of the Foundation or as an officer of the Foundation. *Page 508 
"7. All prior agreements, whether oral or written, between the Foundation, Wake Forest College, and the Baptist State Convention or any of them relating to the subject matter of this agreement are hereby merged in this agreement, and this agreement contains all of the undertakings and obligations of the parties in relation thereto.
"8. This agreement is made subject to the direction of the Baptist State Convention in session assembled on July 30, 1946, that the validity and effectiveness of this agreement, and particularly of Paragraphs 3 and 5 thereof, shall be established by a judgment of the courts of the State of North Carolina.
"In Witness Whereof, Z. Smith Reynolds Foundation, Incorporated, and The Trustees of Wake Forest College have caused this agreement to be executed in their respective names by their respective officers thereunto lawfully authorized, and their corporate seals to be hereunto affixed the day and the year first above written.
Z. SMITH REYNOLDS FOUNDATION, INCORPORATED By /s/ W. N. REYNOLDS President "Attest:
 /s/ STRATTON COYNER Secretary (Corporate Seal)
THE TRUSTEES OF WAKE FOREST COLLEGE By /s/ JOHN A. OATES President "Attest:
 /s/ E. B. EARNSHAW Secretary (Corporate Seal)"
Pursuant to the concluding paragraph of the agreement, that its validity and effectiveness should be established by judgment of the courts of North Carolina, the Z. Smith Reynolds Foundation, Incorporated (hereinafter sometimes called the Foundation), instituted this proceeding in the Superior Court of Forsyth County, and propounded a number of questions for answers and adjudication, to the end that it might know whether it could safely pay out trust funds.
Upon the hearing, both sides offered evidence, documentary and oral, to show the authority of the contracting parties to enter into the agreement and to remove any uncertainty in connection therewith. Judgment was entered upholding the authority of the parties and sustaining the contract. *Page 509 
The Safe Deposit and Trust Company of Baltimore, Trustee of the Zachary Smith Reynolds Trust, appeals, assigning errors.
The parties have agreed on what they want to do. The appellant craves final adjudication of the matters before assuming the risk of paying out trust funds. To this end, certain questions were propounded and answered in the court below. We are asked to review the answers and to say whether they are correct. This we proceed to do.
Preliminarily, questions of status, power and authority of the parties were submitted for inquiry and determination.
I. ZACHARY SMITH REYNOLDS TRUST:
This trust is found to be a valid and subsisting, charitable trust under the laws of the State of North Carolina. It was created by indenture of 21 August, 1936, between Richard J. Reynolds, Mary Reynolds Babcock and Nancy Reynolds Bagley, as grantors, R. Edward Lasater, individual trustee (later resigned), Safe Deposit and Trust Company of Baltimore, corporate trustees (now sole trustee), and Z. Smith Reynolds Foundation, Incorporated. The properties held by this trust are the properties allotted for such purposes to the grantors of the trust by judgment of the Superior Court of Forsyth County, rendered at the Special March 11 Term, 1935, in a civil action entitled "Anne Cannon Reynolds, et al., v. Zachary Smith Reynolds, et al."
(affirmed on appeal, 208 N.C. 578), and also by decree of the Circuit Court of Baltimore City, Maryland, rendered on the 12th day of March, 1936, in a suit entitled "Safe Deposit and Trust Company of Baltimore, et al., v. J. Edward Johnston, et al."
II. Z. SMITH REYNOLDS FOUNDATION, INCORPORATED:
It is ascertained that this corporation was duly organized under the laws of the State of North Carolina on August 21, 1936, solely for the accomplishment of charitable works in the State of North Carolina. It was organized as a part of the plan of the Zachary Smith Reynolds Trust, and is its principal beneficiary. It has performed its corporate functions, continuously since its organization, by making grants for *Page 510 
charitable purposes within the State of North Carolina, and will be entitled to receive the income directed to be paid to it by the terms of the Zachary Smith Reynolds Trust so long as it continues to perform its corporate functions and to comply with the terms and conditions set out in the Trust Indenture.
This Indenture creating the Zachary Smith Reynolds Trust provides, interalia, that all questions pertaining to its validity, construction and administration shall be determined under, and in accordance with, the laws of the State of North Carolina. And further, that the trustees shall "hold the Trust Fund in perpetuity," and pay the net income thereof "in quarterly installments, to the Foundation, for charitable purposes in the State of North Carolina." It also expresses the desire of the grantors that "no change shall be made in the name of The Foundation or its successor, after the death of the survivor of the Grantors. If such change is made thereafter, no further payments shall be made to said corporation hereunder."
It is provided in the charter of The Foundation that it "shall have perpetual existence," and it was determined below that it is a valid and subsisting, charitable corporation.
III. THE TRUSTEES OF WAKE FOREST COLLEGE:
As one of the contracting parties, "The Trustees of Wake Forest College" is declared to be a non-profit, educational institution existing and performing its functions with the support of the Baptist denomination in the State, operating through its local churches and the Baptist State Convention of North Carolina, and as such is a charitable corporation under the laws of the State of North Carolina.
It was originally incorporated by Act of Assembly in 1833, "for the purpose of educating youth, and for no other purposes whatever." In 1839 the name of the corporation was changed to "The Trustees of Wake Forest College," and it was then empowered to confer degrees and marks of literary distinction such as are usually conferred in colleges and universities. In 1923 its existence was made perpetual. Its charter was again amended in the Fall of 1946, authorizing the removal and relocation of Wake Forest College in the City of Winston-Salem, or its environs.
Its status as an eleemosynary institution is not affected by the fact that it derives a part of its operating costs from pay students. The balance of these costs — the sine quo non to its maintenance — comes from endowments, gifts, and Baptist State Convention appropriations.City of Raleigh v. Trustees of Rex Hospital, 206 N.C. 485, 174 S.E. 278. *Page 511 
IV. TRUSTEES OF THE BAPTIST STATE CONVENTION:
It is established that the Trustees of the Baptist State Convention of North Carolina was chartered by Act of Assembly in 1893 and invested "with all the rights, powers, and privileges allowed religious societies by the laws of the State." It is a charitable corporation under the laws of North Carolina. The Convention designates the Trustees of Wake Forest College by election or appointment. It has approved the contract between The Foundation and the Trustees of Wake Forest College and has assumed its obligations thereunder.
V. SAFE DEPOSIT AND TRUST COMPANY OF BALTIMORE, TRUSTEE:
It is made to appear that the Safe Deposit and Trust Company is the corporate, and now sole, trustee of the Zachary Smith Reynolds Trust with power and authority to act as such.
 VI. CONTRACT BETWEEN THE FOUNDATION AND WAKE FOREST COLLEGE:
It was revealed on the hearing that the agreement between The Foundation and Wake Forest College, above set out, was duly executed on November 16, 1946, first having been authorized by the Trustees of The Foundation, The Trustees of Wake Forest College, and the Baptist State Convention of North Carolina.
It was further made to appear that the proposal to move Wake Forest College to a site in or near Winston-Salem had been under consideration and negotiation by all the parties hereto for quite awhile; that definite proposal was made by the plaintiff corporation and its Trustees to the Baptist State Convention of North Carolina in a letter dated July 11, 1946, and that thereafter the contract of November 16, 1946, was duly approved, signed, sealed and delivered.
VII. JUDGMENT OF THE SUPERIOR COURT:
We come now to the judgment entered below and the exceptions taken thereto by the Safe Deposit and Trust Company of Baltimore, Trustee. This corporation is the sole trustee of a charitable trust. It is contemplated by the agreement here submitted for consideration that it will pay out large sums of money, yea all of its foreseeable future income, for the purposes therein designated, and it is fully justified in seeking a final determination of the matter. Indeed, the Baptist State Convention, in session duly assembled, directed that the validity and effectiveness of the agreement, and particularly paragraphs 3 and 5 thereof, be established and made certain by a judgment of the courts of the State of North Carolina. This has been done in the judgment below. All of the parties are *Page 512 
keenly interested in the outcome of this adjudication. The issues are large and the considerations are great on both sides.
VIII. EXCEPTIONS TO THE JUDGMENT:
The appellant's first exception is to the determination that "The Trustees of Wake Forest College" is a charitable corporation under the laws of North Carolina. The exception seems not to be pressed on brief. Hence, as the determination is well supported by authority, West v. Lee, 224 N.C. 79,29 S.E.2d 31; Trust Co. v. Ogburn, 181 N.C. 324,107 S.E. 238; Griffin v. Graham, 8 N.C. 96, the exception will be overruled pro forma.
Exception No. 2: The appellant excepts because it is determined herein that the Zachary Smith Reynolds Trust is a valid and subsisting, charitable trust under the laws of this State and that The Foundation is a valid and subsisting, charitable corporation duly organized and existing under the laws of the State of North Carolina, and, as such, is entitled to receive the income from the Zachary Smith Reynolds Trust as therein provided for the accomplishment of charitable works in the State of North Carolina; whereas the same determinations have heretofore been made in prior litigation, and the doctrine of res judicata forecloses any further consideration of the matters. Undoubtedly, the prior adjudication settled the matters then before the court, but as the same conclusion is reached herein, it can do no harm to declare it again. If one declaration suffice, two ought to make it doubly sure. Anyhow, the matters may now be regarded as settled. The exception seems feckless.
Exception No. 3: The appellant excepts to the determination that The Foundation has full power and authority under the provisions of the Zachary Smith Reynolds Trust and under its charter and by-laws, and in accordance with the laws of the State of North Carolina, to enter into the contract with The Trustees of Wake Forest College, agreeing to pay its annual net income up to the sum of $350,000 to Wake Forest College in perpetuity as provided in the contract, and subject to each and all of the conditions thereof.
The request for this determination was thought necessary because of certain expressions used by this Court in the cases of Woodcock v. WachoviaBank Trust Co., 214 N.C. 224, 199 S.E. 20, and Gaston County UnitedDry Forces, Inc., v. Wilkins, 211 N.C. 560, 191 S.E. 8. It is to be noted, however, that the plan envisioned by the creators of the Smith Reynolds Trust called for (1) the organization of a corporation, under the name of Z. Smith Reynolds Foundation, solely for the accomplishment of charitable works in the State of North Carolina; and (2) the creation of a Trust for charitable purposes in the State of North Carolina, such purposes to be accomplished by the transfer of all *Page 513 
the income of the Trust, not directed to be accumulated, to the Foundation as its chief beneficiary. This arrangement successfully meets the objections pointed out in the Woodcock and United Dry Forces Cases, and distinguishes it from them. Williams v. Williams, 215 N.C. 739,3 S.E.2d 334; Miller v. Atkinson, 63 N.C. 537. Moreover, the recent legislation on the subject, G.S., 36-21, and House Bill No. 678, Session 1947, ought to suffice to quiet the matter. But if additional assurance be needed, it may be found in the following cases: West v. Lee, 224 N.C. 79,29 S.E.2d 31; Humphrey v. Board of Trustees, 203 N.C. 201,165 S.E. 547; Whitsett v. Clapp, 200 N.C. 647, 158 S.E. 183; BenevolentSociety v. Orrell, 195 N.C. 405, 142 S.E. 493; Keith v. Scales,124 N.C. 497, 32 S.E. 809; School for D.D. v. Institution for D.D.,117 N.C. 164, 23 S.E. 171; University v. Gatling, 81 N.C. 508; S. v.Gerard, 37 N.C. 210; Griffin v. Graham, 8 N.C. 96.
The rules against perpetuities do not apply to charitable trusts. Penickv. Bank, 218 N.C. 686, 12 S.E.2d 253; Williams v. Williams, supra;Jones v. Habersham, 107 U.S. 179, 27 L.Ed.., 401. By their very nature they look to perpetuity. The Zachary Smith Reynolds Trust is a perpetual trust. The charter of The Foundation provides that it "shall have perpetual existence," and the corporate life of The Trustees of Wake Forest College, by amendment to its charter, is made perpetual. There is no inherent barrier to the contract here under consideration.
Exception No. 4: The appellant excepts to the determination that paragraphs 2, 3, 4 and 5 of the contract are valid and enforceable. The principal objections urged to this determination is that the net income of The Foundation up to $350,000 per annum is to be accumulated until July 1, 1952, and then paid over to Wake Forest College and that thereafter The Foundation is to pay to the College annually, in perpetuity, its annual net income up to the sum of $350,000.
It is contended that the charter of The Foundation and the Indenture creating the Trust indicate by their terms that the disposition of the income from the Trust to The Foundation is to be made from time to time, and not at any one time in perpetuity. Section 7 of the by-laws of the Foundation further provides that its Trustees shall "at each quarterly meeting . . . designate the charitable purposes or the beneficiaries" for which appropriations are to be made. It is additionally urged as objections that there is no requirement that the College shall continue its operations as a charitable or educational institution, and that it is not clear whether the payments of the annual net income in perpetuity are to be cumulative. The present determination concerns itself primarily with the validity of the contract. Any ambiguity in its terms, short of a fatal indefiniteness, goes to its meaning, rather than to its validity. More about this anon. *Page 514 
The argument of the appellant would seem to overlook the fact that The Foundation is to remain a live corporation and is not to change its name. It has full power and authority to accept gifts from any source, provided they do not conflict with its charitable purposes, and it has express authority to enter into the contract here submitted for consideration. The amendment to the charter of The Trustees of Wake Forest College specifically authorizes it to enter into such a contract in contemplation of the removal of Wake Forest College and its relocation in the City of Winston-Salem, or its environs. The grant of power to make a contract carries with it the authority to fulfill its obligations. Thomas v. Baker,ante, 226. It is a contradiction in law to say that one may agree and yet not perform. Performance is the fulfillment of an obligation or a promise kept. Bank v. Corl, 225 N.C. 96, 33 S.E.2d 613. Here, both parties to the contract have express authority to make it. Both have express power to carry it out. To say there is no requirement that Wake Forest College shall continue its operations as a charitable or educational institution is to disregard the purpose of its creation. It must either operate under its charter or surrender it. Moreover, it is one of the conditions of the contract that Wake Forest College shall maintain its status as a charity to the end that payments may lawfully be made to it by The Foundation. The exception is not well founded.
Exception No. 5: The appellant excepts to the determination that the contract, and each and every provision thereof, is in conformity with the provisions of the Zachary Smith Reynolds Trust, and that The Foundation will be entitled to continue to receive the income from the Trust as provided in the Indenture creating it and to pay such income to The Trustees of Wake Forest College as provided in the contract.
What is said above under Exception No. 4 applies equally to the exception here. Neither is well taken.
Exception No. 6: The appellant excepts to the determination that the contract imposes upon The Foundation the obligation to retain its present name without change, so as to continue to receive the income of the Zachary Smith Reynolds Trust during the existence of the contract with The Trustees of Wake Forest College.
This determination rests upon the familiar principle that "as a man consents to bind himself, so shall he be bound." Elliott on Contracts, Vol. 3, Sec. 1891. It is not only implicit, but also explicit, in the contract that the parties agree to bind themselves to its performance. To carry out its part of the agreement, The Foundation will need the income of the Zachary Smith Reynolds Trust which it is under obligation to receive in its present name, without change, for the accomplishment of charitable works in the State of North Carolina. The Foundation, therefore, is under a double obligation to see that "no change shall be made in the name of The Foundation." It is not to be assumed that a *Page 515 
charitable organization will deliberately hobble itself or to seek, in a disingenuous manner, to avoid its obligations. It has brought this proceeding, not in an effort to get out of its engagements, but as an earnest of its willingness to fulfill them. It is not seeking to ascertain whether it can evade its contracts, but whether it can carry them out. The determination is a counterpart to the prior determination that Wake Forest College agrees to maintain its status as a charitable organization. The covenants are mutual in intent and purpose, and the determinations are complementary. The exception is not sustained.
Exceptions Nos. 7, 8 and 9: These exceptions are addressed to determinations in respect of the authority of the contracting parties to make the contract and its enforceability, which are repetitious of prior determinations, and they seem to have been made out of the abundance of caution. The exceptions are overruled on the basis of former rulings.
Exception No. 10: The appellant excepts to the determination that "neither the contract nor any provision thereof" is in conflict with Section 7 of the by-laws of The Foundation, which is construed as applicable hereafter only to funds not required to be paid to The Trustees of Wake Forest College under the terms of the contract. (Reference is made to Sec. 7 of the by-laws under Exception No. 4 above.)
This determination harmonizes the provisions of the contract with the stipulations and conditions contained in the Indenture creating the Trust and the charter of The Foundation. In matters of this kind, conflicts are not to be sought, but avoided, where it is permissible to do so. The determination accords with approved practice, and the exception to it is not sustained. Meisenheimer v. Alexander, 162 N.C. 226, 78 S.E. 161; 13 Am. Jur., 290.
Exception No. 11: The appellant objects to the determination that paragraph 3 of the contract is not a cumulative obligation, and, in the event the annual net income of The Foundation, in any one year, while the contract is in effect, shall be less than the sum of $350,000 per year, only the annual net income of that year shall be payable to The Trustees of Wake Forest College, and The Foundation shall not be under any obligation in any other year to make up any deficiency out of income in any other year.
Arguments have been advanced by the appellant, not only in respect of the annual net income accruing from and after July 1, 1952, but also for the five-year period immediately prior thereto. This seems to be in excess of the objections advanced and argued below. Furthermore, it is difficult to perceive wherein this determination vitally affects the appellant. It is not challenged by either The Foundation or Wake Forest College. Presumably, the objection is based on the assumption that the contract is invalid and unenforceable. Having held otherwise in respect of the validity and enforceability of the contract, it follows that the *Page 516 
exception here on the part of the appellant must be overruled. No doubt other questions will arise in connection with the application and operation of some of the provisions of the contract, which were not presented on the hearing in the court below, and, of course, are not before us. Sufficient unto the day are the problems thereof. "If the trustee should fail to carry into effect the trust, it will be time enough to invoke the supervision of the court." Trust Co. v. Ogburn, 181 N.C. 324, 107 S.E. 238.
Exception No. 12: The appellant objects to the determination that the contract is binding on The Foundation and The Trustees of Wake Forest College; the direction to each to perform its obligations thereunder, and the specific direction to The Foundation not to change its name while the contract is in force.
The authority for this part of the judgment is to be found in G.S.,1-255. It follows as a necessary corollary to the determinations previously made herein. The exception is not sustained.
Exception No. 13: The appellant objects to the determination that the net income payable to The Foundation, pursuant to the provisions and conditions of the Indenture creating the Trust, is properly payable to the Foundation and is to be disposed of by The Foundation in accordance with its agreement with The Trustees of Wake Forest College in the amount therein provided.
This conclusional determination is but a shorthand statement in summary of what has gone before. It follows necessarily from the determinations previously made. The exception is not sustained.
Exception No. 14: The appellant objects to the determination that the Baptist State Convention of North Carolina, while not a party to the contract, has the power and authority to perform all the acts described in Paragraph 5 (c) of the agreement.
This determination is warranted by the terms of the contract and particularly the 8th paragraph thereof. The Baptist State Convention has a vital interest in the agreement and is so closely allied with it as to be a bearer of some of its burdens and a sharer of some of its benefits. It has approved the contract and assumed its obligations thereunder. It is a party to this proceeding. The exception is not sustained.
Finally, after all is said and done the case comes to a relatively narrow compass. Is the contract submitted for adjudication valid and enforceable? The trial court thought it was. We approve. Wake Forest College has had a long and honorable career, and whether it nestles in a forest of Wake or stands on a knoll in Forsyth, its mission will remain a quest for truth and a crusade for simple right. We would not deny to this great institution and to those whose faith and good works have made it possible, this vista of a new dawn and this vision of a new hope.
The determinations made and conclusions entered below will be upheld.
Affirmed. *Page 517